IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Carlos Albert Perez,<br><br>    Petitioner,<br><br>v.<br><br>D.K. Butler, Warden,<br><br>    Respondent. | No. C 02-2097 JSW<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Carlos Albert Perez, a state prisoner incarcerated at Folsom State Prison, has filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2254. On July 15, 2002, Judge Charles R. Breyer issued an order to show cause (docket no. 2). On November 13, 2002, Judge Breyer granted Respondent's motion to dismiss in part and granted Petitioner's motion to amend the petition, reinstating the petition as to four claims (docket no. 8). On January 13, 2003, Respondent filed points and authorities as well as the answer to the petition for writ of habeas corpus (docket no. 10, 11). On January 14, 2003, the case was reassigned to this Court (docket no. 13). On March 17, 2003, Petitioner filed a traverse (docket no. 16). This order denies the petition for writ of habeas corpus on the merits.

## PROCEDURAL BACKGROUND

Petitioner was convicted by a jury in the Superior Court of the State of California, Santa Clara County of assault by means of force likely to produce great bodily injury upon David Ramirez, battery with serious bodily injury upon David Ramirez, and misdemeanor assault upon

Rene Corral. The jury also found true an allegation that Petitioner personally inflicted great bodily injury for purposes of a three-year sentence enhancement. Petitioner admitted allegations that he had been convicted of a serious or violent felony and that he had served a prior prison term. The trial court denied Petitioner's motion for a new trial based on ineffective assistance of counsel as well as his motion to strike the prior conviction. On November 19, 1999, Petitioner was sentenced to 14 years in state prison.

The California Court of Appeal struck the prison-term enhancement but otherwise affirmed the judgment and denied Petitioner's request for state habeas relief. The Supreme Court of California denied review on November 14, 2001. Petitioner filed the instant petition April 29, 2002.

## FACTUAL BACKGROUND

The facts underlying the charged offenses as found by the Court of Appeal of the State of California, Sixth Appellate District, are summarized as follows:

> On September 24, 1998, David Ramirez and Rene Corral were drinking beer at the Casey Jones bar in Gilroy. An altercation began among six men. The owner succeeded in making the group go outside to the parking lot. A fight among 10 men then ensued. Ramirez went outside to break up the fight but concluded that his efforts would be unnecessary. He began walking back inside the bar. A woman approached him and started talking to him. Witnesses then saw Petitioner strike Ramirez on the left side of the face with his fist. According to Ramirez, he was initially struck on the right back side of the head. Ramirez collapsed. Witnesses say that when he tried to get back up, Al Diaz kicked him in the face. According to Ramirez, after the initial blow put him on the floor, he tried to get up, was struck again, fell again, and then was kicked and hit several times in the face, nose and eye.
> Dr. Roger Vigil treated Ramirez for fractures on the left side of the face and nose, facial contusions and abrasions, head trauma, and a bruise to the back of the right ear. He testified as an expert in the field of emergency medicine that a single blow or kick could have caused all of the injuries to the left side of Ramirez's face.
> Ignacio Cervantes testified for the defense that he went to the bar with Petitioner and Petitioner came to his aid when he became involved in the fight outside the bar. When the defense counsel asked whether Petitioner had hit anyone when Petitioner first came to his aid, Mr. Cervantes replied, "I didn't see him hit anybody."

*People v. Perez,* No. 209431, unpublished op at 2-3 (Cal. Ct. App.)(Pet. Ex A).

2

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 413 (2000). Under the "reasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* An unreasonable determination of the facts by the state court will be found if the federal court is left with a "firm conviction" that the determination was wrong and the one Petitioner urges was correct. *Torres v. Prunty,* 223 F.3d 1103, 1108 (9th Cir. 2000). In deciding whether the state court's decision is contrary to, or an unreasonable application of clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of Petitioner's claim in a reasoned decision. *LaJoie v. Thompson,* 217 F.3d 663, 669 n.7 (9th Cir. 2000). If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. *See Lockhart v. Terhune,* 250 F.3d 1223, 1230 (9th Cir. 2001). If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts. *See Lockhart,* 250 F.3d at 1232.

**DISCUSSION**

I.  Claim of Jury Instruction Error

Petitioner was charged with an enhancement under Penal Code section 12022.7(a). The enhancement provides that a person who "personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony. . .in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of three years. . . (.)"

Using CALJIC 17.20, the trial court instructed the jury as follows:

> If you find beyond a reasonable doubt that a victim or victims suffered great bodily injury, you must then decide whether or not the defendant personally inflicted the great bodily injury.
> In order to prove that the defendant personally inflicted great bodily injury, either of the following must be proved beyond a reasonable doubt:
> 1.  The defendant personally inflicted great bodily injury; or,
> 2.  (a) The defendant participated in a group beating; and
>     (b) It is not possible to determine which assailant inflicted which injuries; and
>     (c) The defendant's conduct was of a nature that could have caused the great bodily injury.
>
> Clerk's Transcript ("CT") at 263.

Petitioner contends that the instruction was improper because it provided a standard of proof less than the constitutionally required standard of proof beyond a reasonable doubt for every element of the charged crime. Petitioner argues that the instruction eliminated from the jury's consideration the determination of whether Petitioner was the direct perpetrator of the crime or merely an aider and abettor. According to Petitioner, the use of CALJIC 17.20, defining personal infliction of great bodily injury under California Penal Code § 12022.7(a), violated his right to have an essential element of the enhancement proven beyond a reasonable doubt. Petitioner contends that the instruction served to lessen the prosecution's burden to prove that he "personally inflicted" the injury due to the language in the charge that defendant's conduct "was of a nature that could have caused" the injury. Petitioner additionally argues that the jury instruction improperly applied state law.

 a.  Legal Standard

A person in custody pursuant to the judgment of a state court can obtain a federal writ of habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or

4

treaties of the United States. 28 U.S.C. § 2254(a). In other words, a writ of habeas corpus is available under § 2254(a) "only on the basis of some transgression of federal law binding on the state courts." *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)), *cert. denied*, 478 U.S. 1021 (1986). It is unavailable for violations of state law or for alleged error in the interpretation or application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994); *see, e.g., Moore v. Rowland*, 367 F.3d 1199, 1200 (9th Cir. 2004) (per curiam) (state's violation of its separation-of-powers principles does not give rise to a federal due process violation); *Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998) (state law determination that arsenic trioxide is a poison as a matter of law and not an element of the crime for jury determination is not open to challenge on federal habeas review); *Franklin v. Henry*, 122 F.3d 1270, 1272-73 (9th Cir. 1997) (court was bound by state court finding that a violation of state law had occurred, but still had to consider whether the violation amounted to a federal constitutional error).

It is unavailable merely because "something in the state proceedings was contrary to general notions of fairness or violated some federal procedural right unless the Constitution or other federal law specifically protects against the alleged unfairness or guarantees the procedural right in state court." *Middleton,* 768 F.2d at 1085. A state court's procedural or evidentiary ruling may be subject to federal habeas review, however, if it violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991); *Middleton*, 768 F.2d at 1085. A federal court can disturb on due process grounds a state court's procedural or evidentiary ruling only if the ruling was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.) *cert. denied*, 479 U.S. 839 (1986).

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

5

crime with which he is charged. *See In re Winship*, 397 U.S. 358, 364 (1970).  This constitutional principle prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *See Yates v. Evatt*, 500 U.S. 391, 400-03 (1991); *Carella v. California*, 491 U.S. 263, 265-66 (1989); *Francis v. Franklin*, 471 U.S. 307, 313 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 520-24 (1979).

The Supreme Court's holdings in *Carella* and *Sandstrom* provide the controlling authority on mandatory presumptions in jury instructions on habeas corpus review. *Powell v. Galaza*, 328 F.3d 558, 563 (9th Cir. 2003) (on remand from United States Supreme Court).  An instruction that creates a mandatory presumption violates due process because it "directly foreclose[s] independent jury consideration of whether the facts proved establish[] certain elements of [the charged offense] . . . and relieve[s] the State of its burden of . . . proving by evidence every essential element of [the] crime beyond a reasonable doubt." *Carella*, 491 U.S. at 265-66 (citations omitted); *see Sandstrom*, 442 U.S. at 521 (holding unconstitutional jury instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" because the jury could have interpreted it as either a burden-shifting or conclusive presumption); *Powell*, 328 F.3d at 563-64 (finding that court's midtrial instruction to jury that defendant's testimony was admission that specific intent element had been satisfied essentially directed jury's verdict, went beyond mandatory presumption instructions in *Carella* and *Sandstrom*, and was not cured by court's later instructions); *Patterson v. Gomez*, 223 F.3d 959, 965-66 (9th Cir. 2000); *United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987).  A mandatory presumption can be reviewed for harmless error because it is not equivalent to a directed verdict for the state--the jury is still required to find the predicate facts underlying each element beyond a reasonable doubt. *Carella*, 491 U.S. at 266; *but cf. Powell*, 328 F.3d at 566-67 (harmless error review inapplicable where trial court's midtrial instruction effectively directed jury to find defendant guilty, thereby depriving him of right to jury verdict under Sixth Amendment).

To obtain federal collateral relief for errors in the jury charge, Petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'").

b. Analysis

The California Court of Appeal addressed this issue in its August 7, 2001 opinion denying Petitioner's direct appeal. The Supreme Court of California issued a decision summarily denying Petitioner's claim. Therefore, this Court looks to the analysis of the Court of Appeal in considering Petitioner's claim of a due process violation. *Lajoie,* 217 F.3d at 669.

The California Court of Appeal denied Petitioner's claim, finding that the language of CALJIC 17.20 was not constitutionally infirm. The Court found that the instruction, which derives from a series of state criminal cases involving group assaults, was based on the principal of concurrent causation rather than an unconstitutional "presumption of guilt." The Court, in a lengthy analysis of Petitioner's claim, stated

> Defendant maintains that the instruction violated his federal constitutional rights because it eliminated from the jury's consideration the factual consideration of causation, specifically whether defendant was the direct perpetrator or an aider and abettor. He relies on the language of Penal Code section 12022.7, subdivision (a), which requires that the accused personally inflict the injury upon the victim. (*People v. Cole* (1982) 31 Cal.3d 568, 572 (*Cole*) ["the individual accused of inflicting great bodily injury must be the person who directly acted to cause the injury. The choice of the word 'personally' necessarily excludes those who may have aided or abetted the actor directly inflicting the injury:].) We disagree with the defendant.
> In the group-beating situation, CALJIC 17.20 requires that the defendant's conduct be "of such a nature that, by itself, it could have caused the great bodily injury." The language pinpointing conduct that "could have caused the great bodily injury" excludes the concept of conduct that "aids, promotes, encourages or instigates, the commission of the crime."
> Defendant also contends that CALJIC 17.20 creates an unconstitutional presumption of guilt. He relies upon the language of the instruction that, he urges, allows a true finding upon the mere possibility that the defendant inflicted the great bodily injury ("could have caused the great bodily injury"). He adds that the language then requires a defendant to rebut the presumption of guilt by proving that someone else personally inflicted the injury. Again, we disagree with defendant's analysis.
> CALJIC 17.20 is based on a comment to former CALJIC 17.20 which read: "When a defendant participates in a group beating and it is not possible to

7

> determine which assailant inflicted which injury, he or she may be punished with a great bodily injury enhancement if his conduct was of such a nature it could have caused the great bodily injury suffered by the victim." (Comment to CALJIC No. 17.20.) This comment is, in turn, derived from *People v. Corona* (1989) 213 Cal.App.3d 589, 594 (*Corona*)...(.)

*Perez,* No. 209431, unpublished op at 8-9 (Cal. Ct. App.)(Pet. Ex A).

The Court of Appeal reviewed the applicable state cases upon which the CALJIC 17.20 definition of personal infliction of great bodily injury is based. The Court also considered the doctrine of concurrent liability under California law which provides for criminal liability for a great bodily injury where a defendant's acts cause a result "even though there is another contributing cause." *Id.* (Citations omitted). The Court of Appeal found that the definition of "personally causing" great bodily injury embodied in CALJIC 17.20, which includes concurrently causing such injury while participating in a group beating, was proper under state law.

In considering the due process claim, the Court stated

> In the concurrent causation situation, "The prosecution need not disprove possible theories of causation raised by the defense; its burden is met if it produces evidence from which it may be reasonably inferred that the defendant's act was a substantial factor in producing the accident." (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements §35, p. 242).
> Thus, when the "could have caused" language of CALJIC No. 17.20 is read and understood with the other group beating language of the instruction (the defendant participated and committed acts) rather than in isolation, it is plain that the language refers to the concept of concurrent causation (that the defendant's act must be a substantial factor in producing the injury) and not to a presumption-of-guilt concept (that the defendant is responsible if there is a possibility that the defendant produced the injury).

*Id.* at 11.

Petitioner complains that the trial court's use of this instruction relieved the prosecution of the burden of proving that Petitioner personally caused great bodily injury within the meaning of Penal Code Section 12022.7 in violation of his due process rights. However, this Court disagrees.

The Court of Appeal found that the definition of great bodily injury set forth in CALJIC 17.20, which includes the causation of an injury concurrently with others in the "group beating" context, was proper under California law. Petitioner takes issue with the state's definition of "personal" causation under 12022.7 to include participation in a group assault where it is not

8

1  possible to determine which assailant caused which injury and Petitioner's conduct alone is such that it could have caused the injury. However, there is nothing constitutionally impermissible in defining "personally caused" in this manner.

As the Ninth Circuit has held, the "state is ordinarily free within broad limits to define the elements of a particular offense(.)" *Stanton*, 146 F.3d at 728. Thus, the Court of Appeal's determination that the definition of "personally causing" great bodily injury includes causing such injuries concurrently with others in a group beating, is not open to challenge on habeas review. *Id. See, also, Estelle,* 502 U.S. at 67-68; *Stanton,* 146 F.3d at 728, (holding that there is no federal requirement that jury be allowed to determine whether arsenic is a poison, where administration of poison is the element state prosecution was required to prove.)

The enhancement instruction does not foreclose independent jury consideration of whether the facts proved established the elements of the charged offense. *See, Carella*, 491 U.S. at 265-66. That is, before the jury could decide whether Petitioner personally caused the injury, the prosecution had the burden of proving that Petitioner either personally caused the injuries or did so by participating in a group beating where it was not possible to determine who caused which injury and that Petitioner engaged in conduct that was of a nature to have caused them. As such, Petitioner's challenge does not state a claim for which habeas relief is available. *See, Estelle,* 502 U.S. at 67-68; *Stanton,* 146 F.3d at 728. Therefore, Petitioner's claim is DENIED.

II.     Claim of Insufficient Evidence

Petitioner alleges that there was insufficient evidence to support his conviction for assault by means of force likely to produce great bodily injury, as well as his conviction for battery with serious bodily injury. In support of his argument, Petitioner asserts that the only evidence that he struck the victim on the left side of the face came from a witness whose testimony was ambiguous. Petitioner also contends that one witness at trial testified that Petitioner's blow landed on the right side of victim's face, while the victim testified that he was struck on the right back side of his head. Petitioner claims that the lone testimony of one

witness who located Petitioner's blow landing on the left side of the victim's face contradicting the others does not constitute sufficient evidence in support of the judgment. Pet. at 16.

    a.    <u>Legal Standard</u>

In examining claims regarding the sufficiency of evidence, the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. at 364; *see Leavitt v. Vasquez*, 875 F.2d 260, 261 (9th Cir. 1989) (state must prove every element of crime beyond a reasonable doubt), *cert. denied*, 493 U.S. 866 (1989); *see e.g., Fiore v. White*, 121 S. Ct. 712, 714 (2001) (due process violated where basic element of crime not proven because statute did not prohibit defendant's conduct). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *see id.* at 324; *see, e.g.*, *Wigglesworth v. Oregon*, 49 F.3d 578, 582 (9th Cir. 1995).

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510 US 843 (1993). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *See id.* (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *See Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338; *Miller v. Stagner*, 757 F.2d 988, 992-93 (9th Cir. 1985), *amended*, 768 F.2d 1090 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048, *and cert. denied*, 475 U.S. 1049 (1986); *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir. 1984), *cert. denied*, 469 U.S. 838 (1984). Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). Mere suspicion and speculation, however, cannot support logical inferences. *Id.*

b.  Analysis

The California Court of Appeal addressed this issue on direct appeal in its August 7, 2001 opinion and the Supreme Court of California summarily denied Petitioner's claim. Therefore, this Court looks to the analysis of the Court of Appeal in considering Petitioner's claim. *Lajoie,* 217 F.3d at 669.

With regard to Petitioner's claim, the California Court of Appeal stated as follows:

> Defendant principally relies on Ramirez's testimony in which Ramirez stated that the initial blow to him was to the right backside of his head, parallel to his ear. Defendant therefore urges that the evidence is insufficient to show that he hit Ramirez in the face (the cause of Ramirez's great bodily injury) as distinguished from the blow to the back of the right ear.
> But Ramirez also testified that he did not "remember that much at all" about the evening. And two eyewitnesses contradicted Ramirez and testified that defendant hit Ramirez in the face.
> Dayna Serrano testified: "There was a man yelling saying you want a piece of me and just-I mean, just- I remember having to come back because I was frightened and he hit him in the face. I just remember blood coming - I just remember all this blood and him falling to the ground." Serrano then identified defendant as the man who hit Ramirez in the face.
> Amy Kerr also testified to the same effect:
>  "[The Prosecutor]: Okay. And you said at some point someone else came up to him and hit him?
> "A. Yes.
> "[The Prosecutor]: Where did this person hit him?
> "A. In the face
> "[The Prosecutor]: Where in the face?
> "A. I believe on the left side; his cheek area, his eye area. I can't tell exactly where.
> "[The Prosecutor]: You said the left side, but you-.
> "A. I'm sorry. It was the left side. As I'm looking at David, it would be on my right side.
> "[The Prosecutor]: Okay. And you had a little trouble with that. Are you sure it was the left side?
> "A. Yes."
> Kerr then identified defendant as the man who hit Ramirez on the left side of the face and added that, although she did not see exactly where defendant's hand landed, she saw blood coming from Ramirez's face, nose and eye before Ramirez collapsed on the ground and was kicked by Diaz.
> It was in the jury's province to resolve the contradiction in the testimony. From the testimony of Serrano and Kerr, a reasonable trier of fact could find defendant guilty beyond a reasonable doubt of count 1 and find true the enhancement tied to count 1.
>
> BATTERY WITH SERIOUS BODILY INJURY
>
> Defendant makes the same argument concerning count 2. Our analysis is therefore the same. The evidence whether defendant hit Ramirez in the face or in the back of the head was in conflict. The jury resolved the conflict against the defendant.

11

*Perez,* No. 209431, unpublished op at 4-5 (Cal. Ct. App.)(Pet. Ex A).

Petitioner has failed to show that the California Court of Appeal's decision was contrary to, or an unreasonable application of clearly established federal law. Federal law provides that in determining if sufficient evidence exists to support a conviction, the court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jackson,* 443 U.S. at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Id.* at 324.

The Court of Appeal found that based on the testimony of the victim and both witnesses to the assault, a reasonable trier of fact could find Petitioner guilty beyond a reasonable doubt. While the California Court of Appeal relied on state law and did not identify the governing federal standard, it found that "substantial evidence" supported the conviction. Where the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts. *See Lockhart*, 250 F.3d at 1232. In this case, the state "substantial evidence" standard is not contrary to established federal law, nor did the state court apply the standard unreasonably to the facts. *See Lockhart*, 250 F.3d at 1232. Accordingly, Petitioner's claim that there was insufficient evidence to support his convictions for assault by means of force likely to produce great bodily injury and battery with serious bodily injury must be DENIED

III.   Admission of Expert Testimony

Petitioner next argues that the trial court erroneously admitted Dr. Vigil's expert testimony. In support of his argument, Petitioner attacks the Court of Appeal's findings that trial counsel's failure to object was without consequence "because the issue was not sophisticated beyond common experience [and] the injuries described by Dr. Vigil amount to a smashed face and most people can imagine from common experience that a single blow to the face could result in a smashed face." Pet. at 17 (quoting *Perez,* No. 209431, unpublished op at 6-7 (Cal. Ct. App.)). Petitioner asserts that the California Court of Appeal erred in presuming that ordinary members

of the public are so familiar with physical altercations that they can determine how much damage a single blow may cause.

### a. Legal Standard

A state court's procedural or evidentiary ruling may be subject to federal habeas review, if it violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *See Pulley*, 465 U.S. at 41; *Jammal*, 926 F.2d at 919-20; *Middleton*, 768 F.2d at 1085. A federal court can disturb on due process grounds a state court's procedural or evidentiary ruling only if the ruling was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *See Maass*, 45 F.3d at 1357; *Colley*, 784 F.2d at 990.

### b. Analysis

The California Court of Appeal found that no prejudice was shown where Petitioner failed to establish either deficient performance or any prejudice from the admission of the expert testimony. Petitioner's claim with regard to the admission of Dr. Vigil's expert testimony fails to state a violation of federal law. Additionally, Petitioner has not established that the admission of testimony by Dr. Vigil deprived Petitioner of the fundamentally fair trial guaranteed by the Due Process Clause. Therefore, the Court of Appeal's findings were not contrary to, or an unreasonable interpretation of, established Supreme Court precedent. Therefore, Petitioner's claim of error is DENIED.

## IV. Ineffective Assistance of Counsel

After the verdict was rendered against Petitioner, he retained new counsel and filed a motion for a new trial based on ineffective assistance of his trial counsel. The motion was denied by the trial court.

According to Petitioner, his Sixth Amendment rights were violated because his trial attorney provided ineffective assistance. Specifically, Petitioner argues that his trial counsel was ineffective for failing to secure the presence of defense witnesses Leticia Gutierrez, Deanna Gutierrez, Damian Gutierrez, Alfonso Diaz, and the emergency room doctor who treated defense witness Cervantes. Petitioner further alleges that his trial counsel was ineffective for failing to

adequately investigate a discrepancy between Cervantes' testimony at the preliminary hearing and the report of an interview with him, prepared by a defense investigator prior to trial.

In its August 7, 2001 opinion, the California Court of Appeal upheld the trial court's denial of a motion for a new trial and summarily denied Petitioner's separate habeas claim without issuing a reasoned decision. On November 14, 2001, the California Supreme Court denied Petitioner's habeas petition without issuing a reasoned decision. Therefore, this Court looks to the analysis of the Court of Appeal on Petitioner's direct appeal in evaluating Petitioner's ineffective assistance of counsel claim. *Lajoie,* 217 F.3d at 669.

    a.   <u>Legal Standard</u>

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* The right to effective assistance of counsel applies to the performance of both retained and appointed counsel without distinction. *See Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Williams (Terry) v. Taylor*, 529 U.S. 362, 404-08 (2000).

A difference of opinion as to trial tactics does not constitute denial of effective assistance, *see United States v. Mayo*, 646 F.2d 369, 375 (9th Cir.), *cert. denied*, 454 U.S. 1127 (1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. *See Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984); *see, e.g., Bell v. Cone*, 535 U.S. 635, 701-02 (2002) (not unreasonable for state court to hold decision to waive closing argument in penalty portion of capital case was competent tactical decision, when waiver prevented "very persuasive" prosecutor from arguing); *United States v. Fredman*, 390 F.3d 1153, 1157-58 (9th Cir. 2004) (counsel's admission that defendant was a "meth crook" by profession and that he had been convicted in California for conspiracy to manufacture methamphetamine was all part of counsel's reasonable strategy to argue that defendant operated independently from the Oregon conspiracy at issue); *Brodit v. Cambra*, 350 F.3d 985, 994 (9th Cir. 2003) (state court reasonably concluded that trial attorney provided effective assistance of counsel where attorney declined to present evidence favorable to defense out of concern that it would open door to unfavorable evidence); *United States v. Ferreira-Alameda*, 815 F.2d 1251 (9th Cir. 1987) (counsel's stipulation to evidentiary facts does not necessarily demonstrate incompetency of counsel); *United States v. Gibson*, 690 F.2d 697, 703-04 (9th Cir. 1982) (failure to make evidentiary objections does not render assistance ineffective unless challenged errors can be shown to have prejudiced the defense), *cert. denied*, 460 U.S. 1046 (1983).

Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). The investigation itself must be reasonable for an

15

attorney's tactical decision based on that investigation to be reasonable. *Wiggins v. Smith*, 539 U.S. 510, 523-24 (2003) (tactical decision not to present life history as mitigating evidence in capital sentencing trial unreasonable where counsel failed to follow up on evidence that defendant had a miserable childhood).

      b.     Analysis

           1.     Failure to Procure Witness Testimony

Petitioner argues that trial counsel was ineffective for failing to make adequate efforts to secure the presence of defense witnesses Leticia Gutierrez, Deanna Gutierrez, Damian Gutierrez, Alfonso Diaz, as well as the emergency room doctor who treated Cervantes. Petitioner argues that the testimony of these witnesses was necessary to bolster the credibility of Petitioner's key witness, Cervantes. Petitioner contends these witnesses would have established that the fight was caused by a member of the other group; that several men were beating Cervantes when Petitioner went to his aid; and that Petitioner had been hit by someone else before he hit anyone. According to Petitioner, these witnesses would have supported his version of events: that his actions were not those of an aggressor, but of someone who, tried to protect a friend in danger, and inadvertently pursued the wrong person.

In upholding the trial court's denial of Petitioner's motion for a new trial based on ineffective assistance of counsel, the Court of Appeal found that "in order to prevail on a claim of ineffective assistance of counsel for failure to call a witness, 'there must be a showing from which it can be determined whether the testimony of the alleged additional defense witness was material, necessary, or admissible, or that defense counsel did not exercise proper judgment in failing to call him.'" *Perez,* No. 209431, unpublished op at 12 (Cal. Ct. App.)(Pet. Ex A)(citing *People v. Hill* (1969) 70 Cal.2d 678, 690.) (internal citations omitted).

16

The Court of Appeal upheld the trial court's finding that trial counsel had made adequate efforts to secure the witnesses' testimony. At the hearing on the motion, the trial court found that trial counsel had made efforts to subpoena witness Leticia Gutierrez who, nonetheless, failed to appear; witness Diaz had informed counsel that he would not testify on Fifth Amendment grounds; and the declarations of Damian Gutierrez and Leticia Gutierrez submitted in support of the motion left "a great deal to be desired, in terms of inference." *Id.* at 13. Trial counsel also attempted unsuccessfully to subpoena the emergency room doctor who treated Cervantes and made a tactical decision not to call the doctor who operated on him. Reporter's Transcript at 65.

The Court of Appeal found that Petitioner had failed to show materiality because a mistake-of-fact defense depends upon a mistake that disproves criminal intent and in this case, assault and battery is characterized by "an intent merely to do a violent act." *Perez,* No. 209431, unpublished op at 13 (Cal. Ct. App.)(Pet. Ex A). Because a mistake-of-fact is not a defense to assault and battery, the witness testimony was immaterial, and thus irrelevant. *Id.*

The benchmark for judging any claim of ineffective counsel is whether counsel's conduct so undermined the proper function of the adversarial system that the trial cannot be relied on to have produced a just result. *Strickland,* 466 U.S. at 686. The proper standard for judging counsel's performance for an ineffective assistance of counsel claim is that of reasonably effective assistance. *Id.* at 687. While the Court of Appeal relied on state law, the state cases correctly identified the governing federal rule set forth in *Strickland* and the state court reasonably applied them to the facts. *See Lockhart*, 250 F.3d at 1232.

Petitioner has failed to demonstrate that his trial counsel was deficient for not presenting certain defense witnesses. The state courts properly found that counsel made reasonable efforts to effectively represent Petitioner; that trial counsel's tactical decision not to call certain defense

17

witnesses was justified; and that Petitioner has failed to show prejudice. *Strickland,* 466 U.S. at 686. Therefore, the state court's findings that counsel effectively represented Petitioner was not contrary to, or an unreasonable application of clearly established federal law.

### 2. Failure to Adequately Investigate Discrepancy in Witness Testimony

Petitioner also argues that his trial counsel was ineffective for failing to adequately investigate a discrepancy between Cervantes' testimony at the preliminary hearing and the report of an interview with him prepared by the defense investigator, Mary Avanti. Petitioner asserts that if trial counsel had properly investigated, he would have noticed the discrepancy between the investigator's report and Cervantes' testimony at the preliminary examination. Finally, Petitioner argues that this omission was prejudicial because it led to Cervantes being discredited as a witness, resulting in Petitioner's conviction. Petitioner claims that Cervantes' testimony would have supported the argument that the attack on Ramirez was a reasonable mistake.

While the Court of Appeal did not separately address this argument, the reasoning of the Court of Appeal decision applies similarly to this claim. Petitioner has failed to show that trial counsel's failure to adequately investigate the discrepancy in Cervantes' testimony prejudiced his defense. *Strickland*, 466 U.S. at 694. As the Court of Appeal pointed out with regard to Petitioner's other ineffective assistance of counsel claims, mistake-of-fact was not a valid defense to the charges. Therefore, Petitioner has not shown prejudice. Nor has he shown that the state court's determination was contrary to, or an unreasonable application of clearly established federal law. Petitioner's claim of ineffective assistance of counsel is DENIED.

//
//
//
//

## **CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: October 3, 2005

                                                     Jeffrey S. White
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE